IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal No. 08-411 |
| | ) [18 U.S.C. 922(g)(1), |
| ROBERT COLBERT a/k/a Ballz | ) 924(c)(1)(A)(i), |
| KEVIN UNDERWOOD a/k/a J Reed | ) 924(c)(1)(A)(iii), 1959, |
| NICKY EVANS a/k/a Yama | ) 1962(d), 2119 and 2 and |
| MICHAEL HENSON a/k/a Henne | ) 21 U.S.C. 841(a)(1) and |
| TERRELL HENSON a/k/a Fifty | ) 841(b)(1)(C)] |
| HOSEA GHAFOOR a/k/a Eey | ) |
| BRYANT MATHIS a/k/a B a/k/a | ) [UNDER SEAL] |
| Lil B | ) |
| AARON FORD a/k/a Forty a/k/a | ) |
| Forty Cal | ) |
| LAMON STREET a/k/a M-Dot | ) |
| a/k/a Mon | ) |
| VALLON WALLACE a/k/a VL | ) |
| MAURICE WALLACE a/k/a Reese | ) |
| DWAYNE JOHNSON a/k/a Weezie | ) |
| a/k/a Fat Wayne | ) |
| JAMES PENDELTON a/k/a Jim Bob | ) |
| a/k/a Bob | ) |
| JAMAR PHARR a/k/a Brownway | ) |
| LYNN GIBSON a/k/a Mennace | ) |
| a/k/a Menno | ) |
| RASHAWN MALACHI a/k/a Melly | ) |
| Mel | ) |
| ARTHUR DAVIS a/k/a Seven | ) |
| MICHAEL WADE a/k/a Swade | ) |
| VANCE PEARSON a/k/a Vinnie P | ) |
| PHILLIP TURNER a/k/a Philly C | ) |
| TERRANCE CLARK a/k/a Doo Wop | ) |
| a/k/a Doodles a/k/a Magnolia | ) |
| Wop | ) |
| TERON JENKINS a/k/a Project | ) |
| DOMINIQUE STEELE a/k/a C-Flack | ) |
| EARL AUGER a/k/a K-Loc | ) |
| NICULAS GAY a/k/a GK | ) |
| DEVON SHEALEY | ) |
| CHERYL CHAMBERS | ) |

1

## SUPERSEDING INDICTMENT

### COUNT ONE

The grand jury charges that:

On or about March 29, 2008, in the Western District of Pennsylvania, the defendant, ROBERT COLBERT, after having been convicted on or about July 25, 2002, in the Court of Common Pleas of Allegheny County, at CC20014506, of Firearms Carried Without a License; on or about May 30, 2002, in the Court of Common Pleas of Allegheny County at CC2000101498, of Possession with intent to distribute a controlled substance, and on or about April 19, 2006 of delivery of a controlled substance and possession with intent to distribute a controlled substance, which are offenses punishable by a term of imprisonment in excess of one year, did knowingly possess in and affecting interstate commerce, a firearm, namely a Taurus, model PT 145 caliber pistol, bearing serial number NXE 74312.

In violation of Title 18, United States Code, Section 922(g)(1).

2

COUNT TWO

GENERAL ALLEGATIONS

A.   At all times relevant to this Indictment, the defendants, ROBERT COLBERT a/k/a Ballz,  KEVIN UNDERWOOD a/k/a J Reed, NICKY EVANS a/k/a Yama, MICHAEL HENSON a/k/a Henne, TERRELL HENSON a/k/a Fifty, HOSEA GHAFOOR a/k/a Bey, BRYANT MATHIS a/k/a B a/k/a Lil B, AARON FORD a/k/a Forty a/k/a Forty Cal, LAMON STREET a/k/a M-Dot a/k/a Mon, VALLON WALLACE a/k/a VL, MAURICE WALLACE a/k/a Reese, DWAYNE JOHNSON a/k/a Weezie a/k/a Fat Wayne, JAMES PENDELTON a/k/a Jim Bob a/k/a Bob, JAMAR PHARR a/k/a Brownway, LYNN GIBSON a/k/a Mennace a/k/a Menzo, RAYSHAWN MALACHI, a/k/a Melly Mel, ARTHUR DAVIS a/k/a Seven, MICHAEL WADE a/k/a Swade, VANCE PEARSON a/k/a Vinnie P, PHILLIP TURNER a/k/a Philly C.,  TERRANCE CLARK a/k/a Doo Wop a/k/a Doodles, a/k/a Magnolia Wop, TERON JENKINS a/k/a Project, DOMINIQUE STEELE a/k/a C-Flack,, KARL ANGER a/k/a K-Loc, NICKLAS GAY a/k/a GK, DEVON SHEALEY and others known and unknown to the grand jury, constituted an "enterprise," as defined by Title 18, United States Code, Section 1961(4)(hereinafter the enterprise), that is a group of individuals associated in fact, although not a legal entity, consisting of two sets of Crips; the Brighton Place Crips and the Northview Heights/Fineview Crips that operated in the Northside Section of Pittsburgh, Pennsylvania.   This enterprise was engaged in, and its activities affected interstate and foreign

3

commerce.

B.   The purposes of the enterprise include the following:

1.   Enriching the members and associates of the enterprise through, among other things, robbery, and the possession and distribution of controlled substances, including heroin, cocaine and cocaine base, in a form commonly known as crack;

2.   Preserving and protecting the power, territory and profits of the enterprise through the use of intimidation, violence, threats of violence, assaults and attempted murder;

3.   Promoting and enhancing the enterprise and its members and associates, by providing support to members and associates who were incarcerated pending charges and/or serving sentences for charges, including through the payment of money for attorney fees, bond, telephone bills and jail commissary accounts, as well as providing monetary support to family members and dependents;

4.   Preserving and protecting the power of the enterprise through bribery, witness intimidation and other methods involving the obstruction of justice; and

5.   Keeping victims in fear of the enterprise and in fear of its members and associates through threats of violence and violence.

C.   At all times material to this indictment, the Brighton Place Crips were a criminal street gang that controlled an area

4

comprised of Brighton Place, Morrison Street, also known as the Mad Cave, and Federal Street in the Northside area of Pittsburgh, Pennsylvania.

D. The Brighton Place Crips were formed in the early 1990's and continue to operate to present.

E. During the time period material to this Indictment the defendants ROBERT COLBERT a/k/a Ballz, KEVIN UNDERWOOD a/k/a J Reed, NICKY EVANS a/k/a Yama, MICHAEL HENSON a/k/a Henne, TERRELL HENSON a/k/a Fifty, HOSEA GHAFOOR a/k/a Bey, BRYANT MATHIS a/k/a B a/k/a Lil B, AARON FORD a/k/a Forty a/k/a Forty Cal, LAMON STREET a/k/a X-Dot, a/k/a Mon, VALLON WALLACE a/k/a VL, MAURICE WALLACE a/k/a Reese, DWAYNE JOHNSON a/k/a Weezie a/k/a Fat Wayne, JAMES PENDELTON a/k/a Jim Bob a/k/a Bob and others known and unknown to the grand jury claimed allegiance to or were associated with the Brighton Place Crips.

F. The Northview Heights/Fineview Crips were a criminal street gang that operated in the Northview Heights, a public housing venue located in the Northside of Pittsburgh, and Fineview, a neighborhood located nearby. The Northview Heights/Fineview Crips were formed around 2001-2002 and continue to operate to present.

G. During the time period material to this indictment defendants JAMAR PHARR a/k/a Brownway, LYNN GIBSON a/k/a Mennace a/k/a Menno, RAYSHAWN MALACHI, a/k/a Melly Mel, ARTHUR DAVIS a/k/a

Seven, MICHAEL WADE a/k/a Swade, VANCE PEARSON a/k/a Vinnie P,
PHILLIP TURNER a/k/a Philly C., TERRANCE CLARK a/k/a Doodles a/k/a
Doo Wop, a/k/a Magnolia Wop, TERON JENKINS a/k/a Project, DOMINIQUE
STEELE a/k/a C-Flack, KARL ANGER a/k/a K-Loc, NICKLAS GAY a/k/a GK,
DEVON SHEALEY and others known and unknown to the grand jury
claimed allegiance to the Northview Heights/Fineview Crips.

H.  In or around 2002-2003, members of the Brighton Place and
Northview Heights/Fineview Crips formed an alliance.  The purposes
of uniting the members and associates of two sets of Crips were to:

1.  Expand the enterprise's geographical territory for
profit and power from the market for illegal drugs;

2.  Increase the number of members and associates of the
enterprise available to preserve and protect the power, territory
and profits of the enterprise; and

3.  Eliminate rivalries to each other's territories;
thereby increasing their security and ability to operate.

I.  At all times material to this indictment, members and
associates of the Brighton Place and Northview Heights/Fineview
Crips were feuding with the Manchester Original Gangsters
(Manchester O.G.'s), a criminal street gang, located in the
Manchester area of the Northside Section of Pittsburgh,
Pennsylvania.

J.  At times material to this Indictment, the Brighton Place
and Northview Heights/Fineview Crips wore blue, including

6

bandannas, shirts and tennis shoes.   The Brighton Place and Northview Heights/Fineview Crips used hand signs signifying Crip membership, adopted Crip calls, including "booya" and terms such as the use of "Loc", "cuz", "C-Safe", "G.K." (Manchester O.G. killer) and had tattoos, which identified themselves as members, including "RIP Silk" and "Silky man", commemorating the murder of Northview Heights/Fineview Crip member William Thompson, "S.O.E.", representing the gang motto "Soldiers Over Everything", "1728" or "28," a street address of an abandoned building located on Brighton Place, where gang members congregated, and "GK Avenue," representing the on-going street war with the Manchester O.G.'s.

F.   Subsequent to the merger, and continuing thereafter and to date, members and associates of both the Brighton Place and the Northview Heights/Fineview Crips would carry on narcotics related activity and commit acts of violence, including attempted murder and robbery in each others' territory; that is the Fineview, Northview Heights, Mad Cave, and Brighton Place, areas of the Northside Section of Pittsburgh to the exclusion of others. Members and Associates of the Brighton Place and the Northview Heights/Fineview Crips supported each other while incarcerated, by contributing money for the payment of attorneys fees, bond, jail commissary accounts, telephone bills, as well as monetary payments for the support of family members and dependents.

L.   Members and associates of the Brighton Place and Northview

Heights/Fineview Crips engaged in bribery, witness intimidation and other methods involving the obstruction of justice on behalf of each other.

M. Members and associates of the Brighton Place and Northview Heights/Fineview Crips kept victims in fear of the enterprise and in fear of its members and associates through threats of violence and violence.

## MEANS AND METHODS OF THE ENTERPRISE

N. Among the means and methods by which the defendants and others known and unknown to the grand jury conducted and participated in the conduct of the enterprise were the following:

1. Members and associates of the enterprise committed, and attempted to commit acts of violence, including attempted murder and robbery, to protect and expand the enterprise's criminal operations;

2. Members and associates of the enterprise promoted a climate of fear and intimidation, through armed violence and threats of violence;

3. Members and associates of the enterprise trafficked in cocaine, cocaine base, in a form commonly known as crack, and heroin.

4. Members and associates of the enterprise sometimes individually arranged to purchase quantities of illegal drugs, and at other times members and associates organized informal syndicates

8

among themselves to purchase quantities of cocaine, cocaine base and heroin. During the existence of the enterprise members and associates of the enterprise acted with knowledge of and support for their common armed drug trafficking activities. Members and associates of the enterprise gained status within the enterprise by forming a relationship with a major "connect," i.e. a source for controlled substances.

5. Members and associates defended themselves and their control of drug trafficking in the area of Brighton Place, Federal Street, the Mad Cave, Fineview and Northview Heights against encroachment from others. Members and associates used violence and threats of violence to maintain exclusive control of drug distributions in their territory. Members and associates, whose primary responsibility was providing protection for the enterprise were referred to as Gorillas and/or Soldiers.

6. Members and associates of the enterprise illegally used, carried and shared firearms, including handguns, rifles and shotguns.

7. Members and associates maintained "trap" houses i.e. abandoned houses or houses occupied by individuals, usually females, which members and associates used to store firearms and drugs.

8. Members and associates of the enterprise had violent confrontations with members of the rival Manchester OG's, and other

street gangs operating in the Northside Section of Pittsburgh. These confrontations, which were referred to as "work," or "riding out," often involved members and associates of the enterprise shooting at rival gang members from moving vehicles, and otherwise. Some of these confrontations were intended to be reprisals for acts of violence committed upon members and associates of the enterprise.

9.   Members and associates obtained greater authority and prestige within the enterprise based upon their reputation for violence and their ability to obtain and sell a steady supply of illegal drugs.

10.  Members and associates of the enterprise maintained a strict code of non-cooperation with law enforcement officers. Members and associates of the enterprise, who were the victims of violence by rival gang members or other members and associates of the enterprise and/or witnesses to such acts of violence were prohibited from cooperating with or providing information to law enforcement agencies.   Instead, members and associates of the enterprise were expected to "keep it in the streets," i.e. engage in acts of retaliation against those individuals who had committed the acts of violence.  Members and associates who did not comply with this code of conduct were ostracized, prohibited from the enterprise's territory and trap houses, physically assaulted and threatened with acts of violence.

10

11. Members and associates of the enterprise threatened or bribed potential witnesses who might testify regarding illegal activities of the enterprise's members and associates.

12. Members and associates showed their enterprise affiliation by wearing blue-colored clothing, displaying specific hand signs, wearing specific tattoos and by shouting a specific call. The enterprise and its members and associates referred to themselves by agreed upon names.

## ROLE IN THE ENTERPRISE

O. Generally, an individual gained status and authority within the organization by putting in "work," or "riding out," i.e. committing violent acts against rival gang members; or obtaining a "connect," i.e. a source for controlled substances, including heroin, cocaine and cocaine base.

P. At times material to this Indictment, defendants ROBERT COLBERT a/k/a Ballz, KEVIN UNDERWOOD a/k/a J Reed, NICKY EVANS a/k/a Yama, VALLON WALLACE a/k/a VL, and BRYANT MATHIS a/k/a B a/k/a Lil B, JAMAR PEARR a/k/a Brownway, and Lynn Gibson a/k/a Menno a/k/a Mennace and other individuals known and unknown were considered respected members and leaders of the enterprise, due to their reputation for violence, including the "putting in of work," as well as their demonstrated ability to instruct other members and associates of the enterprise as to how to conduct the affairs of the enterprise, including the possession and

11

distribution of firearms, acts of violence, the possession and distribution of controlled substances, and acts of witness intimidation. Defendants ROBERT COLBERT a/k/a Ballz, KEVIN UNDERWOOD a/k/a J Reed, VALLON WALLACE a/k/a VL, BRYANT MATHIS a/k/a B, JAMAR PEARR a/k/a Brownway and LYNN GIBSON a/k/a Mennace a/k/a Menno were also distributors of heroin, cocaine, cocaine base and other controlled substances.

Q.   At times material to this Indictment, the defendant DWAYNE JOHNSON a/k/a Weezie a/k/a Fat Wayne, was a "connect" for the enterprise for supplying other members of the enterprise with controlled substances, including cocaine and cocaine base. Defendant JOHNSON also acted as a "bagman", for the enterprise by collecting money from other members and associates of the enterprise for the purposes of paying attorney fees and bond on behalf of other members and associates of the enterprise and for the purpose of making contributions to their commissary accounts at the jail.

R.   At times material to this indictment, the defendant JAMES PENDLETON a/k/a Jim Bob was a "connect" for the enterprise, supplying other members of the enterprise with cocaine and cocaine base.

S.   At times material to this indictment, defendants AARON FORD a/k/a Forty a/k/a Forty Cal, LAMON STREET a/k/a M-Dot a/k/a

Mon, ARTHUR DAVIS a/k/a Seven, TERRENCE CLARK a/k/a Doodles a/k/a Doo Wop a/k/a Magnolia Wop, TERON JENKINS a/k/a Project, DOMINIQUE STEELE a/k/a C-Flack, KARL ANGER a/k/a K-Loc, NICKLAS GAY a/k/a GK, and DEVON SHEALEY were considered "gorillas/soldiers" for the enterprise, providing protection for the enterprise through the possession and use of firearms, and the commission of acts of violence. Defendants LAMON STREET a/k/a M-Dot a/k/a Mon, ARTHUR DAVIS a/k/a Seven, TERRANCE CLARK a/k/a Doodles a/k/a Doo Wop a/k/a Magnolia Wop, TERON JENKINS a/k/a Project, DOMINIQUE STEELE a/k/a C-Flack and NICKLAS GAY a/k/a GK were also "hustlers", that is distributors of controlled substances, including heroin and cocaine base.

7.   At times material to this Indictment, defendants MICHAEL HENSON a/k/a Henne, TERRELL HENSON a/k/a Fifty, HOSEA GHAFOOR a/k/a Bey, MAURICE WALLACE a/k/a Reese, RASHAWN MALACHI a/k/a Melly Mel, MICHAEL WADE, a/k/a Swade, VANCE PEARSON a/k/a Vinnie P., and PHILLIP TURNER a/k/a Philly C, were members and associates of the enterprise, who were "hustlers", that is distributors of controlled substances, including heroin, cocaine base and cocaine. Defendants WADE, TURNER and PEARSON also engaged in acts of violence, including armed robbery.

## THE RACKETEERING CONSPIRACY

U.    From in and around 2000 to present, defendants ROBERT
COLBERT a/k/a Ballz, KEVIN UNDERWOOD a/k/a J Reed, NICKY EVANS a/k/a
Yama, MICHAEL HENSON a/k/a Henne, TERRELL HENSON a/k/a Fifty, HOSEA
GEAFOOR a/k/a Bey, BRYANT MATHIS a/k/a B a/k/a Lil B,   AARON FORD
a/k/a Forty a/k/a Forty Cal, LAMON STREET a/k/a M-Dot a/k/a Mon,
VALLON WALLACE a/k/a VL, MAURICE WALLACE a/k/a Reese, DWAYNE JOHNSON
a/k/a Weezie a/k/a Fat Wayne, JAMES PENDLETON a/k/a Jim Bob a/k/a
Bob, JAMAR PEARR a/k/a Brownway, LYNN GIBSON a/k/a Mennace a/k/a
Menne, RAYSHAWN MALACHI a/k/a Melly Mel, ARTHUR DAVIS a/k/a Seven,
MICHAEL WADE a/k/a Swade, VANCE PEARSON a/k/a Vinnie P, PHILLIP
TURNER a/k/a Philly C, TERRANCE CLARK a/k/a Doodles a/k/a Doo Wop
a/k/a Magnolia Wop, TERON JENKINS a/k/a Project, DOMINIQUE STEELE
a/k/a C-Flack, KARL ANGER a/k/a K-Loc, NICKLAS GAY a/k/a GK, DEVON
SEALEY and others known and unknown to the grand jury, being
persons employed by and associated with the enterprise, described
in the General Allegations Section of this Indictment, which
enterprise was engaged in and the activities of which affected
interstate and foreign commerce, knowingly, intentionally and
unlawfully conspired to violate 18 U.S.C. §1962(c), that is to
conduct and participate, directly and indirectly, in the conduct of
the affairs of that enterprise through a pattern of racketeering
activity, as that term is defined by 18 U.S.C. 1961(1) and (5);

14

consisting of multiple acts involving robbery and murder chargeable under the following provisions of state law:

Title 18 Pa. C.S.A. §3701 (Robbery) and,

Title 18 Pa. C.S.A. §§901 and 2502(a) (murder),

and multiple acts involving the distribution of narcotic drug controlled substances including cocaine, heroin and cocaine base, in violation of the laws of the United States, Title 21 U.S.C. §§841(a)(1) and 846,

and multiple acts indictable under the following provision of federal law: Title 18 U.S.C. 1512(c)(2).

V.  It was further part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

W.  It was further part of the conspiracy that the following overt acts alleged below were committed in furtherance of the conspiracy.

### OVERT ACTS 1-78: RELATING TO THE POSSESSION AND DISTRIBUTION OF HEROIN, CRACK/COCAINE AND COCAINE

On or about the dates listed below, the following defendants distributed and possessed with intent to distribute a controlled substance, the identity and quantity of which is set forth below, and/or discussed narcotic related business with a fellow member of the enterprise, each act constituting a separate overt act:

15

| OVERT ACT NO. | DATE | TYPE AND QUANTITY OF CONTROLLED SUBSTANCE AND/OR NATURE OF DISCUSSION | DEFENDANTS INVOLVED |
|---|---|---|---|
| 1 | Multiple occasions between 05/20/00- 5/3/05, including 5/20/00, 6/22/04, 9/14/04, 11/11/04 | A quantity of heroin | UNDERWOOD |
| 2 | 9/1/00 | 5 grams or more of cocaine base | COLBERT |
| 3 | 11/16/00 | A quantity of heroin | PENDELTON |
| 4 | 06/03/01 | A quantity of heroin and five grams or more of cocaine base | TERELL HENSON |
| 5 | Multiple occasions from in and around 2003 to in and around August 2006 including on 1/5/06 and 3/16/06 | A quantity of heroin | MALACHI |
| 6 | Multiple occasions from in and around 2003 to in and around August 2006, including on 5/21/05 | A quantity of heroin | WADE |

| 7 | Multiple occasions from in and around 2003 to in and around August 2006 | A quantity of heroin | PEARSON |
|---|---|---|---|
| 8 | Multiple occasions from in and around 2003 to in and around August 2006 including on 11/19/05 | A quantity of heroin and/or a quantity of cocaine base | GIBSON |
| 9 | Multiple occasions from in and around 2003 to in and around August 2006, including on 2/28/04 | A quantity of heroin | PHARR |
| 10 | 4/6/04 | A quantity of cocaine base | VALLON WALLACE |
| 11 | 5/29/04 | A quantity of cocaine base | UNDERWOOD |
| 12 | 8/5/04 | A quantity of cocaine base | MAURICE WALLACE |
| 13 | 6/15/05 | A quantity of cocaine base | MICHAEL HENSON |
| 14 | 5/12/05 | A quantity of cocaine base | COLBERT |
| 15 | 9/26/05 | A quantity of heroin and 5 grams of more of cocaine base | PENDELTON |

| 16 | 2/2/06 | A quantity of cocaine base | JOHNSON |
|---|---|---|---|
| 17 | 3/10/06 | A quantity of cocaine base | GAY |
| 18 | 3/16/06 | A quantity of cocaine base | MALACHI |
| 19 | 4/22/06 | A quantity of cocaine base | MATHIS |
| 20 | 4/22/06 | A quantity of cocaine base | MAURICE WALLACE |
| 21 | 9/7/06 | 50 grams or more of cocaine base | DAVIS |
| 22 | 12/1/06 | A quantity of cocaine base | MAURICE WALLACE |
| 23 | 7/27/08 | Discussion relating to the disposition of a quantity of drugs that VALLON WALLACE had possessed prior to being incarcerated | VALLON WALLACE/ MATHIS |
| 24 | 10/31/07 | Discussion relating to using money MALACHI possessed prior to being incarcerated to purchase additional drugs to make more money | MALACHI |
| 25 | Multiple occasions from in and around April 2007 to in and around November 2007 | A quantity of cocaine base | GHAFOOR MATHIS MICHAEL HENSON, CLARK MAURICE WALLACE JOHNSON PENDELTON |
| 26 | In and around November 2007 | A quantity of heroin | PHARR |

18

| 27 | 12/5/07 | Discussion relating to distribution of drugs on Brighton Place and the need to make money | MICHAEL HENSON/ STREET |
| 28 | 12/10/07 | Discussion relating to the distribution of drugs TURNER possessed prior to being incarcerated and disposition of the proceeds | TURNER/CLARK |
| 29 | 12/16/07 | Discussion relating to obtaining possession of drugs and firearms CLARK possessed prior to going to jail | STREET/CLARK |
| 30 | 12/24/07 | Discussion with CA relating to distribution of drugs "down 'dusky," an area which had been taken over | TURNER |
| 31 | 1/8/08 | 5 grams or more of cocaine base | MAURICE WALLACE |
| 32 | 1/8/08 | 5 grams of more of cocaine base | STREET |
| 33 | 1/8/08 | Using radio scanner to monitor police activity on Brighton Place | GHAFOOR |
| 34 | 1/21/08 | Discussion with LL relating to a possible source for drugs who was about to be released from jail | MALACHI |

19

| 35 | 1/24/08 | Request made to MALACHI by another member of the Northview Heights/Fineview Crips for GIBSON'S number because he "got some," referring to drugs | MALACHI/GIBSON |
|----|---------|-----------|-----------|
| 36 | 2/2/08 | VALLON WALLACE instructed a younger brother that he and MAURICE WALLACE should be out there "getting that money," referring to the distribution of drugs | VALLON WALLACE |
| 37 | 2/15/08 | MALACHI instructed LL to use "runners" to distribute his drugs | MALACHI |
| 38 | 3/20/08 | A quantity of cocaine base | MATHIS |
| 39 | 3/24/08 | A quantity of heroin | JENKINS |
| 40 | 3/28/08 | Possession of $1000 in drug proceeds | COLBERT |
| 41 | 3/31/08 | A quantity of cocaine base | STREET |

| 42-48 | 4/1-9/08 | On various occasions, COLBERT discusssed the distribution of controlled substances he possessed, prior to going to jail, including heroin and cocaine base, with several members of the Brighton Place Crips | COLBERT |
|---|---|---|---|
| 49 | 4/21/08 | Discussion about a drug customer who may be cooperating with police | MATHIS/ MAURICE WALLACE |
| 50 | 6/11/08 | Discussion regarding disposition of a controlled substance JOHNSON possessed prior to going to jail | MICHAEL HENSON/ JOHNSON |
| 51-56 | 5/1/08- 11/12/08 | Discussions relating to the trafficking in controlled substances including heroin and the fact that PHARR has "work," i.e. drugs for redistribution | JENKINS/GAY |

| 57 | 3/14/09 | STREET, who obtained STEELE's cellular telephone after STEELE went to jail, and STEELE discussed STREET taking over STEELE's drug customers while STEELE was in jail and STEELE provided STREET with information as to how he operated including the fact that his voice-mail code was "1728" and the name of his main customer was "Bob." | STREET/STEELE |
| 58 | 3/14/09 | STREET told STEELE that he referred one of STEELE's drug customers to JOHNSON and STEELE told STREET that he needed to go and meet the customers himself | STREET/STEELE/ JOHNSON |
| 59 | 3/15/09 | STEELE asked STREET if any drug customers called his phone, they discussed the fact that it's Sunday and business was slow as well as several customers who STEELE sold heroin to, including Bob and a female | STREET/STEELE |
| 60 | 3/16/09 | Discussed distribution of heroin to STEELE's customers | STREET/STEELE |

| 61-62 | 3/17/09 | STREET and STEELE discussed heroin customers, including a female and Bob | STREET/STEELE |
|-------|---------|---------|---------|
| 63 | 3/17/09 | A quantity of heroin stamped "MLBs" | STREET |
| 64 | 3/18/09 | MATHIS and STREET, at STEELE's direction, used the money that PHARR gave them for STEELE's bond to purchase a brick of heroin | STREET/MATHIS/STEELE/PHARR |
| 65-67 | 3/21/09 | Discussion about drug customers named "Pat" who was coming through to obtain heroin in ten minutes and a customer who may be calling JOHNSON for controlled substances, who STREET thought was "Jeff" | STREET/STEELE/JOHNSON |
| 68 | 3/21/09 | STEELE calls JOHNSON who said that "Jeff" was not calling him but acknowledged that another of STEELE's customers was calling him | STEELE/JOHNSON |

| 69 | 3/21/09 | STEELE discussed heroin customers who are contacting STREET and the fact that the drug addicts in jail are telling STEELE that the "Charles Street ****" are selling the most drugs and it's a "competition" | STEELE/STREET |
|---|---|---|---|
| 70 | 3/22/09 | Discussed a drug customer who was on the telephone with STREET and wanted something "small." | STREET/STEELE |
| 71 | 3/23/09 | STEELE and STREET discussed the fact that STREET is about to get "two whole ones" and that PHARR had agreed to "look out" for STREET and MATHIS i.e. provide them with heroin to sale | STREET/STEELE/ PHARR |
| 72 | 3/28/09 | STREET told STEELE that he had reestablished contact with "Bob," a heroin customer of STEELE's | STREET/STEELE |
| 73 | 3/29/09 | Discussion relating to distribution of narcotics on Brighton Place | STREET/MATHIS |
| 74-75 | 4/4-5/09 | Discussions relating to the distribution of narcotics and proceeds resulting therefrom | GIBSON/PHARR |

24

| 76 | 06/22/09 | A quantity of heroin | MALACHI |
| 77 | 06/24/09 | A quantity of heroin | STREET |
| 78 | 10/14/09 | 50 grams or more of cocaine base | JOHNSON |

OVERT ACTS 79-91 RELATING TO
THE COMMISSION AND PLANNING
OF ROBBERIES

On or about the dates listed below, in the Western District
of Pennsylvania, the following defendants committed robbery, in
that in the course of committing a theft of various items, said
defendants did threaten the victims identified below with
immediate serious bodily injury and did put the victims in fear
of immediate serious bodily injury by pointing handguns at them,
and/or did discuss and plan the commission of robberies, as part
of the Enterprise's on going racketeering activity, each robbery
and/or discussion relating to the planning or commission of a
robbery constituting a separate overt act:

| OVERT ACT NO. | DATE | VICTIM OF ROBBERY AND/OR NATURE OF DISCUSSION | DEFENDANTS INVOLVED |
|---|---|---|---|
| 79 | 5/23/05 | DM AND CW | WADE/PEARSON |
| 80 | 8/29/06 | DG | DAVIS |
| 81 | 8/27/07 | MB | CLARK/TURNER |
| 82 | 9/4/07 | MG | CLARK/TURNER |

| 83 | 10/27/07 | JENKINS, in the process of assuring VALLON WALLACE that he would have money to put on his commissary account at the jail, told WALLACE that he had to "make some moves out here," and that "he had something in line tonight," and that he was "about to hit," and that they did a couple of "robberies around this area" and obtained a watch | VALLON WALLACE/ JENKINS |
|---|---|---|---|
| 84 | 2/2/08 | TURNER told another individual that when he got out of jail "we gonna be hitt'n those licks again," referring to the commission of robberies | TURNER |
| 85 | 4/13/08 | Discussed a potential robbery on the Westside of Pittsburgh | ANGER/SHEALEY |
| 86 | 5/26/08 | armed robbery of DA, NA and DS | SHEALEY |
| 87 | 5/26/08 | armed robbery of MTN | SHEALEY |
| 88-90 | 3/21/09 | STEELE and STREET discussed a robbery that STREET, TERRELL HENSON and others were about to commit and a prior robbery committed by MATHIS, | STEELE/STREET/ MATHIS/ TERRELL HENSON |

| 91 | 3/21/09 | MATHIS told STEELE that he was going to join STREET and them who were planning to commit a robbery | MATHIS/STEELE |
|---|---|---|---|

## OVERT ACTS 92-95: RELATING TO ATTEMPTED MURDER

On or about the dates set forth below, in the Western District of Pennsylvania, the defendants identified below, acting with intent to kill, did shoot the victims, identified in the table set forth below:

| OVERT ACT NO. | DATE | VICTIM OF ATTEMPTED MURDER | DEFENDANTS INVOLVED |
|---|---|---|---|
| 92 | 5/19/05 | MANCHESTER OG BJ | DAVIS |
| 93 | 6/2/05 | MANCHESTER OG DS | ANGER, at the direction of COLBERT |
| 94 | 9/7/06 | WILSON AVENUE GANGSTER BM | DAVIS |
| 95 | 9/7/06 | WR | DAVIS |

## OVERT ACTS 96-99: RELATING TO SHOOTINGS

On or about the dates set forth below the following defendants committed shootings in furtherance of the Enterprise:

27

| OVERT ACT NO. | DATE | VICTIM OF SHOOTING | DEFENDANTS INVOLVED |
|---|---|---|---|
| 96 | 10/5/05 | MANCHESTER OG DG | SHEALEY and another individual who had a firearm provided by GIBSON |
| 97 | 5/8/06 | MANCHESTER OG DN | DAVIS |
| 98 | 3/15/08 | DR | STREET |
| 99 | 3/6/09 | Shooting at unknown person in Hoodtown | STEELE |

## OVERT ACTS 100-120: RELATING TO
## OBSTRUCTION OF OFFICIAL PROCEEDINGS

On or about the dates set forth below, in the Western District of Pennsylvania, the defendants named below did knowingly and corruptly attempt to obstruct, influence and impede official proceedings, each act constituting a separate overt act:

| OVERT ACT | DATE | PROCEEDING | NATURE OF OBSTRUCTION | DEFENDANTS INVOLVED |
|---|---|---|---|---|
| 100 | 5/15/07 | Criminal No. 07-77 (WD PA) | Informed SC that OL is cooperating and instructed him that somebody "needs to whoop that ***," and to tell JENKINS and KO | DAVIS |

28

| 101 | 10/31/07 | Criminal No. 07-77 (WD PA) | Instructed another individual to assault OL for being a "snitch" | DAVIS |
|---|---|---|---|---|
| 102 | 5/31/07 | Criminal No. 07-77 (WD PA) | GH told DAVIS that OL was talking "dirt," on him and DAVIS replied that he had people out looking for OL | DAVIS |
| 103-105 | 12/16/07 to 12/17/07 | Prosecution for violations of 18 USC 111(a)(1) and 924(c) | Attempted to get Marquella LNU to falsely admit that she was in possession of the firearm CLARK was alleged to have possessed | CLARK/STREET/ JOHNSON/FORD |
| 106-109 | 3/31/08 to 4/5/08 | Prosecution for violation of 18 USC 922(g)(1) | Attempted to get KR, a juvenile, to admit to possession of the firearm | COLBERT |
| 110 | 2/22/09 | Magistrate No. 08-605 (WD PA) and Criminal No. 05-390 (WD PA) | Attempted to bribe NA to falsely testify that he was not the person who committed armed robbery of NA and others | SHEALEY |

| 111-118 | 3/28/09 to 4/2/09 | Prosecution for violation of 18 USC 922(g)(1) | Attempted to get WS or another person to falsely admit to possession of a firearm | MATHIS/PHARR/ STREET/ TERRELL HENSON |
|---|---|---|---|---|
| 119-120 | 6/25/09 and 7/6/09 | Criminal No. 08-418 (WD PA) | False testimony of JOHNSON that MAURICE WALLACE was not in his vehicle on 1/8/08 and did not flee therefrom | MAURICE WALLACE/ JOHNSON |

### OTHER OVERT ACTS 121-147: INVOLVING OBSTRUCTION IN FURTHERANCE OF THE ENTERPRISE

On or about the dates set forth below, in the Western District of Pennsylvania, the defendants named below did engage in acts of intimidation and obstruction in furtherance of the Enterprise, each act constituting a separate overt act:

| OVERT ACT NO. | DATE | PROCEEDING | NATURE OF OBSTRUCTION | DEFENDANTS INVOLVED |
|---|---|---|---|---|

| 121 | 3/28/07 | Pending homicide charge against STEELE for murder of MW | JENKINS advised DAVIS that defendant Michael Wade went to court on STEELE and defendant DAVIS told JENKINS to go see "what's up with that" | JENKINS/DAVIS/STEELE |
|---|---|---|---|---|
| 122 | 4/20/07 | Pending homicide charge against STEELE for murder of MW | STEELE and MATHIS discussed the fact that WADE was the only witness against STEELE and that they were going to "chop this shit up." | MATHIS/STEELE |
| 123 | 5/20/07 | Pending homicide charge against STEELE for murder of MW | Discussion concerning the fact that WADE was telling on STEELE and that they needed to get PEARSON "to come and say you know what I mean" | JENKINS/ANGER/STEELE |

| 124 | 7/20/07 | Pending homicide charge against STEELE for murder of MW | VALLON WALLACE advised JOHNSON that he assaulted WADE because WADE was going to court on STEELE | VALLON WALLACE/ JOHNSON/STEELE |
|---|---|---|---|---|
| 125 | 7/20/07 | Pending homicide charge against STEELE for murder of MW | VALLON WALLACE advised MATHIS that he assaulted WADE | VALLON WALLACE/ MATHIS/STEELE |
| 126 | 1/28/08 | Pending homicide charge against STEELE for murder of MW | MATHIS told VALLON WALLACE that there were three people in the jail where WALLACE was incarcerated "snitch'n" against STEELE and if he saw any of them he should "whoop their ass." | VALLON WALLACE/ MATHIS/STEELE |
| 127 | 2/18/08 | Pending homicide charge against STEELE for murder of MW | MATHIS assured STEELE that he told everybody that RH was a witness against STEELE | STEELE/MATHIS |

| 128 | 7/4/08 | Pending homicide charge against STEELE for murder of MW | Unidentified female told MATHIS and GAY that STEELE told WADE to come to court and say that he, STEELE, did not kill MW | MATHIS/GAY/STEELE |
|---|---|---|---|---|
| 129 | 5/19/07 | Attempted homicide Manchester OG DS | ANGER told MATHIS that DS was still coming to court and MATHIS replied that he would send someone to court | ANGER/MATHIS |
| 130 | 5/20/07 | Attempted homicide Manchester OG DS | JENKINS asked ANGER "what's up with dude," referring to DS, and told ANGER that he would do whatever had to be done to get ANGER out | ANGER/JENKINS |
| 131 | 4/10/08 | Attempted homicide Manchester OG DS | ANGER told SHEALEY that "little dude," referring to DS signed an affidavit and he should "knock" the charge | ANGER/SHEALEY |

| 132 | 7/16/07 | Pending firearm charge against VALLON WALLACE | Discussion about juvenile falsely admitting to the firearm WALLACE is charged with possessing | VALLON WALACE/ MATHIS |
|---|---|---|---|---|
| 133 | 8/1/07 | Pending firearm charge against VALLON WALLACE | Three way call between VALLON WALLACE, MATHIS and P, a juvenile about P falsely admitting to possession of the firearm WALLACE is charged with possessing | VALLON WALACE/ MATHIS |
| 134 | 8/1/07 | Homicide charge pending against SC | STEELE told SC that he would get to a witness against SC and "make him drop it." | STEELE |
| 135 | 8/18/07 | Homicide charge pending against SC | SC asked AJ to contact JENKINS because he needed JENKINS to "handle shit for him." | JENKINS |

| 136 | 8/28/07 | Homicide charge pending against SC | SC told MATHIS to get in touch with the uncle of one of the witnesses and tell him to holler at the witness | MATHIS |
|-----|---------|-------------|-------------|--------|
| 137 | 8/29/07 | Homicide charge pending against SC | SC told CLARK to get in touch with the uncle of one of the witnesses and tell him to "holler at his little nephew . . . so he can go to my lawyer's office and make that happen and I'll be walking out of this . . jail." | CLARK |
| 138 | 9/2/07 | Homicide charge pending against SC | GIBSON told SC that he did not know the date of SC's hearing or they would have been present in court in an attempt to intimidate the witness | GIBSON |

| 139 | 9/13/07 | Homicide charge pending against SC | SC told MATHIS that he had heard that a witness against him was up the "hood," and MATHIS responded that JENKINS and them "ain't doing their job" | MATHIS/JENKINS |
|---|---|---|---|---|
| 140 | 8/27/07 | robbery charge | Assault on ZC, a witness to the armed robbery of MB and warning not to say anything | CLARK |
| 141-145 | 3/31/08 to 4/8/08 | Shooting of DR by STREET | Intimidation of DR, a victim of an assault by STREET | STREET/MATHIS/ FORD/JOHNSON |
| 146 | 4/1/08 | Possession of a firearm by STREET | Attempt to get AR, a juvenile to admit to possession of the firearm | STREET/MATHIS/ JOHNSON/ MICHAEL HENSON |
| 147 | 11/7/08 | Homicide charge SC | GAY told JENKINS to have people show up at hearing on SC's homicide charge to intimidate witnesses | GAY/JENKINS |

OVERT ACTS 148-211: RELATING TO
POSSESSION OF AND DISCUSSIONS
INVOLVING POSSESSION AND USE
OF FIREARMS

On or about the dates listed below, in the Western District
of Pennsylvania, the following defendants acting in furtherance
of the Enterprise possessed and/or discussed the possession and
use of firearms, each act of possession constituting a separate
overt act in furtherance of the enterprise:

| OVERT ACT NO. | DATE | FIREARM POSSESSED | DEFENDANT |
|---|---|---|---|
| 148 | 05/16/00 | 9mm Keltec handgun | MICHAEL HENSON |
| 149 | 09/18/00 | .22 Dan Wesson handgun | GHAFOOR |
| 150 | 10/27/00 | unknown make and model | MICHAEL HENSON |
| 151 | 01/16/01 | .22 Ruger handgun | MICHAEL HENSON |
| 152 | 07/20/02 | .45 Interarms handgun | GHAFOOR |
| 153 | 09/18/02 | .380 Highpoint handgun | GHAFOOR |
| 154 | 01/20/03 | .40 Glock handgun | FORD |
| 155 | 02/07/03 | .32 Winchester handgun | DAVIS |
| 156 | 05/10/03 | 9mm S&W handgun | GIBSON |
| 157 | 08/28/03 | .40 S&W handgun | PHARR |
| 158 | 09/23/03 | 9mm Intratec handgun | DAVIS |
| 159 | 09/26/03 | .22 Ruger handgun | MALACHI |
| 160 | 09/07/04 | 7.62 x 39 Roman, SA Cugir rifle | UNDERWOOD |
| 161 | 09/27/04 | .32 Iver Johnson handgun | ANGER |
| 162 | 02/10/05 | 9mm Inez handgun | MATHIS |
| 163 | 04/15/05 | 9mm S&W handgun | VALLON WALLACE |

| 164 | 06/07/05 | Jennings Bryco handgun | ANGER |
|---|---|---|---|
| 165 | 08/12/05 | Keltec handgun | ANGER |
| 166 | 09/08/05 | 9mm Browning Arms handgun | MAURICE WALLACE |
| 167 | 09/26/05 | .45 Kimber handgun | PENDELTON |
| 168 | 11/17/05 | .380 Lorcin handgun | MATHIS |
| 169 | 11/04/05 | .40 Glock handgun | SHEALEY |
| 170 | 03/18/06 | 9mm H&K handgun | EVANS |
| 171 | 03/31/06 | .380 S&W Sigma handgun | VALLON WALLACE |
| 172 | 04/04/06 | 9mm Highpoint handgun | EVANS |
| 173 | 04/04/06 | Obtaining of proceeds from sale of 9mm Highpoint handgun by EVANS to BM | MALACHI/EVANS |
| 174 | 04/07/06 | .38 Taurus handgun | DAVIS |
| 175 | 06/23/06 | .38 Taurus handgun | VALLON WALLACE |
| 176 | 08/09/06 | .40 Highpoint handgun | TURNER |
| 177 | 09/11/06 | 9mm Glock handgun | TERRELL HENSON |
| 178 | 12/01/06 | .22 H&R handgun | MAURICE WALLACE |
| 179 | 4/07-11/07 | Use of 1611 Brighton Place to store firearms including a 9mm Cobray firearm | GHAFOOR/CLARK/ MAURICE WALLACE |
| 180 | 07/05/07 | 9mm Starr handgun | VALLON WALLACE |
| 181 | 7/6/07 | CLARK tells STEELE he has a Ruger firearm waiting for him when STEELE gets out of jail and STEELE replied "don't let go of that bro . . .we gonna show them young *** how to do it, we gonna get this money, man." | STEELE/CLARK |

| 182 | 7/16/07 | VALLON WALLACE and MATHIS discuss a firearm which WALLACE refers to as a "dip-dip," and MATHIS, after determining that MAURICE WALLACE knows where the firearm is located, told VALLON WALLACE that he, MATHIS, would handle it. | VALLON WALLACE/ MAURICE WALLACE/ MATHIS |
|---|---|---|---|
| 183 | 12/11/07 | Pointing of firearm at ATF and Task Force Agents who were believed to be members of Hoodtown Mafia, a rival gang | CLARK |
| 184 | 12/25/07 | CA told Turner he obtained a Glock.  Turner asked about a "chrome bitch," and CA told him that "cuz went down with it. . . that's a goner" | TURNER |
| 185 | 01/08/08 | 9mm Ruger and 9mm Cobray handgun | MAURICE WALLACE |
| 186 | 01/08/08 | 9mm Makarov handgun | STREET |
| 187 | 01/21/08 | Possession of a firearm | STREET |
| 188 | 01/21/08 | Possession of a firearm | FORD |
| 189 | 2/2/08 | CA told TURNER that "We need those joints. . .With them joints ••• ain't gonna say nothing . . . Without them its ugly" | TURNER |
| 190 | 2/15/08 | LL told Malachi he had a firearm for him when he was released from jail | MALACHI |
| 191 | 3/13/08 | Possession of a firearm | PENDELTON |
| 192 | 03/20/08 | Possession of a firearm | MATHIS |

| 193 | 03/22/08 | Discussed whether discarded firearm had been found | MATHIS/PHARR |
|---|---|---|---|
| 194 | 03/22/08 | Discussed that discarded firearm had not been found | MATHIS/FORD |
| 195 | 3/23/08 | Possessions of firearms by FORD and instruction by MATHIS not "to pass them out. Them is yours until I touch," i.e. released from jail | MATHIS/FORD |
| 196 | 3/28/08 | Discussed being on the block on Sundays with firearms and drugs | MATHIS |
| 197 | 3/24/08 | Possession of firearm | STREET |
| 198 | 3/27/08 | MATHIS, while in jail, asked STRRET how many "joints," i.e firearms they had and when STREET replied "two," MATHIS indicated he would contact DF about obtaining more | MATHIS/STREET |
| 199 | 03/29/08 | .45 Taurus handgun | COLBERT |
| 200 | 03/31/08 | 9mm Glock handgun | STREET |
| 201 | 4/10/08 | Discussion about getting a firearm back from K.R., a juvenile | COLBERT |
| 202 | 4/17/08 | Discussion about availability of firearms and need to contact JENKINS to obtain a firearm | VALLON WALLACE/ MAURICE WALLACE |

40

| 203 | 4/19/08 | FORD asked MATHIS if he wanted him to "make the wooden one smaller," referring to "sawing off" one of the firearms MATHIS had arranged for FORD to possess | FORD/MATHIS |
|---|---|---|---|
| 204 | 6/12/08 | Discussions about obtaining a firearm from a juvenile | JOHNSON/ PENDELTON/ MAURICE WALLACE |
| 205 | 8/15/08 | Discussion relating to trading the two firearms that MATHIS had arranged for FORD to obtain, one of which was "hot," i.e. used in a shooting and decision to trade one and keep one | MATHIS/FORD/ JOHNSON |
| 206 | 3/19/09 | Discussion about missing firearm, which TERRELL HENSON had at one point | STEELE/MATHIS/ TERRELL HENSON |
| 207 | 03/28/09 | 9mm Taurus handgun | MATHIS |
| 208 | 3/28/09 | Discussion about firearms which MATHIS and others threw from a vehicle on 3/28/09 | STEELE/STREET |
| 209 | 4/24/09 | Discussion about two "clips," i.e. guns | GIBSON/PHARR |
| 210 | 5/3/09 | AC told PHARR to tell IP to give the "joint," i.e. firearm to Fresh | PHARR |
| 211 | 12/15/09 | .357 Ruger firearm | TURNER |

OVERT ACTS 212-261: RELATING TO THE PROVISION
OF MONETARY SUPPORT TO INCARCERATED
MEMBERS OF THE ENTERPRISE

On or about the dates set forth below, in the Western District of

41

Pennsylvania, the defendants named below engaged in discussions relating to the payment of attorney fees, bond and deposits of money to jail commissary accounts, each discussion constituting a separate overt act in furtherance of the Enterprise:

| OVERT ACT NO. | DATE | NATURE OF DISCUSSION | DEFENDANTS INVOLVED |
|---|---|---|---|
| 212 | 4/3/07 | PLACEMENT OF "CHANGE," i.e. money on EVANS' jail commissary account | PHARR/EVANS |
| 213 | 5/20/07 | Obtaining of money to place on ANGER's jail commissary account | JENKINS/ANGER/MATHIS/GAY |
| 214 | 7/4/07 | MATHIS contributed $450 towards attorney fees for DC | MATHIS |
| 215 | 7/6/07 | GAHFOOR told STEELE, who is incarcerated, that he is trying to get money together for him | GHAFOOR/STEELE |
| 216 | 7/6/07 | STEELE told JENKINS he needed $5000 for attorney fees and JENKINS said he and the others would get some money together. | STEELE/JENKINS |
| 217 | 7/14/07 | VALLON WALLACE asked MAURICE WALLACE if he gave JOHNSON money to put on STEELE's jail commissary account | VALLON WALLACE/MAURICE WALLACE/JOHNSON/STEELE |
| 218 | 7/20/07 | JOHNSON agreed to put money on VALLON WALLACE's jail commissary account and WALLACE told JOHNSON that "he is holding it down for the blue team." | VALLON WALLACE/JOHNSON |

| 219 | 8/8/07 | Provision of money to jail commissary account | CLARK/STEELE |
| 220 | 8/15/07 | Provision of money on jail commissary account | JOHNSON/STEELE |
| 221 | 10/11/07 | Provision of money on jail commissary account | JOHNSON/STEELE |
| 222 | 10/21/07 | EVANS told GIBSON to talk to JENKINS and tell him to collect money to pay ANGER's bond because he, EVANS, "sat down" with ANGER and needed him "out there." | EVANS/GIBSON/ JENKINS/ANGER |
| 223 | 10/30/07 | GAY told unknown individual to tell JENKINS that he needed money on his jail commissary account | GAY/JENKINS |
| 224 | 11/13/07 | Provision of money on jail commissary account | JENKINS/ VALLON WALLACE |
| 225 | 12/5/07 | Provision of money on jail commissary account through JOHNSON | MICHAEL HENSON/ MATHIS/ JOHNSON |
| 226 | 1/5/07 | Requested money for jail commissary account | MICHAEL HENSON/ STREET |

| 227 | 12/13/07 | CLARK told CA to contact JOHNSON to pay his attorney fees | CLARK/JOHNSON |
|---|---|---|---|
| 228 | 12/14/07 | CLARK told another individual to contact MATHIS and tell him not to leave me down here "like this." | CLARK/MATHIS |
| 229 | 12/16/07 | Payment of Attorney fees and money to be deposited in jail commissary account | STREET/CLARK |
| 230 | 12/19/07 | Provision of money on jail commissary account | JOHNSON/STEELE |
| 231 | 4/17/08 | Discussion in which VALLON WALLACE tells MAURICE WALLACE that he, GHAFFOR and JOHNSON are always paying for lawyers and putting money on jail commissary accounts and holding the hood down | VALLON WALLACE/ MAURICE WALLACE |
| 232 | 1/10/08 | Request by Clark to get "change" from PHARR | CLARK/PHARR |
| 233 | 1/10/08 | CLARK instructed MATHIS to call JENKINS to get his money from PHARR | CLARK/MATHIS/ JENKINS/PHARR |

| 234 | 1/13/08 | CLARK talks with AG and tells him to contact Monster from the Hill District to collect $300 for his lawyer and commissary account | CLARK |
|-----|---------|------------------------------------|------------------|
| 235 | 1/13/08 | AG told CLARK that he has not talked to PHARR yet about getting the money PHARR owed CLARK | CLARK/PHARR |
| 236 | 1/13/08 | JENKINS told CLARK that he would give money to JOHNSON to pay CLARK's bond | JENKINS/CLARK/ JOHNSON |
| 237 | 1/20/08 | MATHIS told CLARK he would arrange for money to be put on CLARK's commissary account and assured him he was holding it "down to the fullest." | MATHIS/CLARK |
| 238 | 2/9/08 | Provision of money on jail commissary account | PENDELTON/CLARK |
| 239 | 2/15/08 | CA told CLARK that he could have his "young *****" put money on CLARK's commissary account because they just "hit a lick," i.e. committed a robbery | CLARK |
| 240 | 2/18/08 | Request by STEELE for money for his commissary account | STEELE/MATHIS |

| 242 | 2/18/08 | GAY asked AG to contact JENKINS to put money on his jail commissary account | GAY/JENKINS |
| 242 | 2/20/08 | Requested money to pay attorney | GAY/JENKINS |
| 243 | 3/26/08 | Provision of money for jail commissary account | PENDELTON/MATHIS |
| 244 | 3/27/08 | GAY requested FORD to ask GIBSON and PEARR for money to pay for attorney fees | GAY/FORD/GIBSON/PEARR |
| 245 | 4/1/08 | MATHIS told JOHNSON to contact an attorney on STREET's behalf and tell him that "whatever he wants we got him." | MATHIS/STREET/JOHNSON |
| 246 | 4/10/08 | Provision of money | PENDELTON/GHAFOOR |
| 247 | 6/21/08 | Provision of money for jail commissary account | MICHAEL HENSON/JOHNSON |
| 248 | 9/2/08 | JENKINS offered to put money on GAY's commissary account but said he had to "bust a few moves first." | JENKINS/GAY |

| 249 | 9/2/08 | JENKINS told GAY that he had money for him | JENKINS/GAY |
|---|---|---|---|
| 250 | 11/7/08 | GAY told JENKINS to pick up money that KO had for him | GAY/JENKINS |
| 251 | 2/18/09 | Offered money to purchase court clothes | GIBSON/SHEALEY |
| 252 | 3/14/09 | STEELE told STREET he needed $3000 for bond and said "That ain't shit with my phone," meaning that STREET can raise the money easily by selling to STEELE's old drug customers | STEELE/STREET |
| 253 | 3/14/09 | STEELE told STREET to contact PENDELTON to get $800 for his bond and to tell him that STEELE got him "right back." | STEELE/STREET/ PENDELTON |
| 254 | 3/16/09 | Discussed raising money for STEELE's bond including contacting PENDELTON | STREET/STEELE/ MATHIS |
| 255 | 3/16/09 | PHARR agreed to give $400 to STEELE for bond | STEELE/PHARR |

| 256 | 1/23/09 | MATHIS agreed to give money MAURICE WALLACE's jail account | MATHIS/ MAURICE WALLACE |
|---|---|---|---|
| 257 | 3/17/09 | MATHIS agreed to give STEELE $40 for his commissary account at the jail | MATHIS/STEELE |
| 258 | 3/22/09 | STEELE asked STREET to give money to a girl for her telephone bill | STEELE/STRRET |
| 259 | 3/23/09 | STREET told STEELE he would give him some money for his commissary account | STREET/STEELE |
| 260 | 3/30/09 | MATHIS instructed STREET to collect money for his commissary account and for his bond from PENDELTON AND TERRELL HENSON | MATHIS/STREET/ PENDELTON/ TERRELL HENSON |
| 261 | 3/30/09 | MATHIS told another individual to ask PENDELTON for $250 and told JOHNSON to put money on his commissary account | MATHIS/JOHNSON/ PENDELTON |

OVERT ACTS 262-301:   MISCELLANEOUS DISCUSSIONS
RELATING TO CONDUCTING THE AFFAIRS OF
THE ENTERPRISE

On or about the dates set forth below, in the Western District of
Pennsylvania, the defendants identified below engaged in discussions, as
described below, relating to the conducting of the affairs of the

Enterprise:

| OVERT ACT NO. | DATE | NATURE OF DISCUSSION | DEFENDANTS INVOLVED |
|---|---|---|---|
| 262 | 5/19/07 | CLARK told ANGER, who is incarcerated, that "I need ya'll gorillas out there with me, there's only a few of us left" | CLARK/ANGER |
| 263 | 5/20/07 | Requested information on cooperators | JENKINS/ANGER |
| 264 | 7/6/07 | Discussed getting matching tattoos on their shoulders to signify that they were "generals" over their "young squad" | STEELE/CLARK |
| 265 | 7/6/07 | Discussed everyone staying out of jail because it was "going to be on" when STEELE was released from jail | STEELE/JENKINS |
| 266 | 4/7/08 | VALLON WALLACE telling his brother MW to be smart and stay out of jail and "hold it down." | VALLON WALLACE |
| 267 | 8/9/07 | Discussed needing to hire an attorney for the "team." | MATHIS/ VALLON WALLACE |
| 268 | 8/10/07 | Expressed desire that GHAFOOR not testify against rival gang member | STEELE |
| 269 | 11/07 | Offered to retaliate against individuals, who stole drugs and money from PHARR | MATHIS/FORD |

| 270 | 12/3/07 | Discussed with JOHNSON about retaliating against rival gang member | STEELE/JOHNSON |
| 271 | 12/4/07 | Discussed fact that the "trap" was now on Morrison | STREET/STEELE |
| 272 | 12/5/07 | Instructed MICHAEL HENSON to make sure that someone was "holding it down and keeping his *** mouth shut" | STREET/ MICHAEL HENSON |
| 273 | 12/10/07 | Warned CLARK that he was "hot as hell," and "stay out the way." | TURNER/CLARK |
| 274 | 12/20/07 | Discussed retaliating against rival gang members who are in jail | STEELE/JOHNSON/ MATHIS/STREET |
| 275 | 1/20/08 | Discussed the fact that MICHAEL HENSON was out of jail and "in it." | MATHIS/CLARK |
| 276 | 1/22/08 | Discussed an individual, who may be cooperating, and the need to "play" that person "close." | GAY/MATHIS/ STEELE |
| 277 | 1/30/08 | Offer by CLARK to retaliate against an individual who robbed JOHNSON | MAURICE WALLACE/ CLARK/JOHNSON |
| 278 | 1/22/08 | Admonishment for not "putting in work." | VALLON WALLACE/ MAURICE WALLACE |
| 279 | 3/24/08 | Instructed an unknown individual to tell MAURICE WALLACE that "B said . . . these young . . . need some guidance." | MATHIS/ MAURICE WALLACE |

| 280 | 3/25/08 | Instructed AR to be on "top of things" because others may try them and to STREET to watch for members of rival gangs "riding through." | MATHIS/STREET |
|---|---|---|---|
| 281 | 3/26/08 | Instructed MAURICE WALLACE to provide guidance to the "young ***" and told him that STREET and FORD would tell him how to do this. | MAURICE WALLACE/ MATHIS/FORD/ STREET |
| 282 | 3/21/08 | Discussed arrest of AR and STREET and whether the police would be able to take the "whole team down," and need to have STREET out | MATHIS/FORD/ STREET |
| 283-284 | 4/10/08 and 4/15/08 | Discussed about need to make sure GHAFOOR was not providing information on MATHIS and offer by MATHIS to admit to possession of the firearm GHAFOOR was charged with possesing | PENDELTON/ MATHIS/GHAFOOR |
| 285-291 | 4/11/08- 4/26/08 | Discussed retaliating against members of Hoodtown Mafia for murder of DF and need to keep witnesses from going to police | MATHIS/FORD/ VALLON WALLACE/ MAURICE WALLACE |
| 292 | 9/2/08 | Discussed SHEALEY committing a "hit" on someone | JENKINS/GAY |
| 293 | 10/09/08 | Relayed information as to location of individual with whom JENKINS was feuding | GAY/JENKINS |

| 294 | 11/11/08 | Discussed the fact that it was not "safe out there" because of the number of Brighton Place Crips in jail and concern over whether TERRELL HENSON a/k/a Fifty "can hold it down." | GAY/JENKINS/ TERRELL HENSON |
| 295-297 | 3/21/09 | STREET, after talking to MATHIS, told STEELE to assault another individual, who is in jail, who they think shot MICHAEL HENSON | STREET/MATHIS/ STEELE/ MICHAEL HENSON |
| 298 | 3/21/09 | STEELE and MATHIS discussed an assault on individual who allegedly shot MICHAEL HENSON and STEELE's conversations with that individual concerning the shooting | MATHIS/STEELE |
| 299 | 4/2/09 | Discussed looking for Petra FNU/LNU in order to assault him for being disrespectful to PHARR | PHARR/STREET/ TERRELL HENSON |
| 300 | 4/3/09 | Discussed AJ being given a subpoena to testify and shown photographs of people | MATHIS/FORD/ PHARR |
| 301 | 7/21/09 | Assaulted an inmate at NEOCC | MATHIS/COLBERT/ MAURICE WALLACE |

SPECIAL SENTENCING FACTOR

X.   From in or around 2000 to present, in the Western District of Pennsylvania, the defendants ROBERT COLBERT a/k/a Ballz,  KEVIN UNDERWOOD a/k/a J Reed, NICKY EVANS a/k/a Yama, MICHAEL HENSON a/k/a Henne, TERRELL HENSON a/k/a Fifty, HOSEA GHAFOOR a/k/a Bey, BRYANT

MATEIS a/k/a B a/k/a Lil B, AARON FORD a/k/a Forty a/k/a Forty Cal,
LAMON STREET a/k/a M-Dot a/k/a Mon, VALLON WALLACE a/k/a VL, MAURICE
WALLACE a/k/a Reese, DWAYNE JOHNSON a/k/a Weezie a/k/a Fat Wayne, JAMES
PENDELTON a/k/a Jim Bob a/k/a Bob, JAMAR PHARR a/k/a Brownway, LYNN
GIBSON a/k/a Mennace a/k/a Menno, RAYSHAWN MALACHI, a/k/a Melly Mel,
ARTHUR DAVIS a/k/a Seven, MICHAEL WADE a/k/a Swade, VANCE PEARSON a/k/a
Vinnie P, PHILLIP TURNER a/k/a Philly C.,   TERRANCE CLARK a/k/a Doo Wop
a/k/a Doodles, a/k/a Magnolia Wop, TERON JENKINS a/k/a Project,
DOMINIQUE STEELE a/k/a C-Flack,, KARL ANGER a/k/a K-Loc, NICKLAS GAY
a/k/a GY, DEVON SHEALEY and others known and unknown to the grand jury
did distribute and possess with intent to distribute 50 grams or more
of a mixture and substance containing a detectable amount of cocaine
base, in a form commonly known as crack, in violation of Title 21,
United States Code, Sections 841(a)(1) and 841(b)(1)(A)(iii).

In violation of Title 18, United States Code, Section 1962(d).

## COUNT THREE

The Grand Jury further charges that:

1.   At all times relevant to this Indictment, the Brighton Place/Northview Heights/Fineview Crips, as more fully described in Paragraphs A-T of Count One of this Indictment, which are realleged and incorporated by reference, as though set forth fully herein, constituted an enterprise as defined  in Title 18, United States Code, Section 1959(b)(2), namely the Brighton Place/Northview/Fineview Crips, that is a group of individuals associated in fact which was engaged in, and the activities of which affected, interstate and foreign commerce.   The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

2.   At all times relevant to this Indictment, the above-described enterprise, through its members and associates engaged in racketeering activity as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), namely acts involving robbery, in violation of 18 Pa. C.S.A. §3701, murder, in violation of 18 Pa. C.S.A. §§901 and 2502(a), narcotics trafficking in violation of Title 21, United States Code, Sections 841(a)(1) and 846 and acts indictable under Section 1512(c)(2) of Title 18, United States Code.

3.   On or about May 19, 2005, in the Western District of Pennsylvania, for the purpose of gaining entrance to and maintaining and increasing his position in the enterprise described in Count Two of the Superseding Indictment, an enterprise, engaged in racketeering activity,

which is engaged in and the activities of which affect interstate and foreign commerce, the defendant, ARTHUR DAVIS a/k/a Seven, knowingly, intentionally and unlawfully, did attempt to murder BJ, a known member of the Manchester OG's, as prohibited by 18 Pa.C.S. §§901(a), and 2502(a).

In violation of Title 18, United States Code, Section 1959(a)(5).

## COUNT FOUR

The Grand Jury further charges that:

1.   Paragraphs One and Two of Count Three of the Indictment are realleged and incorporated by reference, as though set forth fully herein.

2.   On or about May 19, 2005, in the Western District of Pennsylvania, for the purpose of gaining entrance to and maintaining and increasing his position in the enterprise described in Count Two of the Superseding Indictment, an enterprise, engaged in racketeering activity, which is engaged in and the activities of which affect interstate and foreign commerce, the defendant, ARTHUR DAVIS a/k/a Seven, knowingly, intentionally and unlawfully did assault with a dangerous weapon, BJ, as prohibited by 18 Pa.C.S. §2702.

In violation of Title 18, United States Code, Section 1959(a)(3).

## COUNT FIVE

The grand jury further charges that:

On or about May 19, 2005, in the Western District of Pennsylvania, the defendant ARTHUR DAVIS a/k/a Seven, knowingly, intentionally and unlawfully did use and carry a firearm during and in relation to the commission of crimes of violence, that being the violent crime in aid of racketeering activity alleged in Counts Three and Four of the Superseding Indictment, as well as the Conspiracy to conduct and participate in the affairs of an enterprise, which is engaged in interstate commerce, through a pattern of racketeering activity, as prohibited by Title 18, United States Code, Section 1962(d), as charged at Count Two of the Superseding Indictment, which is incorporated herein and did possess said firearm in furtherance thereof.

In violation of Title 18, United States Code, Section 924(c)(1)(A)(iii).

## COUNT SIX

The grand jury further charges that:

1.  Paragraphs One and Two of Count Three of the Indictment are realleged and incorporated by reference, as though set forth fully herein.

2.  On or about October 5, 2005, in the Western District of Pennsylvania, for the purpose of gaining entrance to and maintaining and increasing his position in the enterprise described in Count Two of the Superseding Indictment, an enterprise, engaged in racketeering activity, which is engaged in and the activities of which affect interstate and foreign commerce, the defendant, DEVON SHEALEY, knowingly, intentionally and unlawfully did assault with a dangerous weapon DG, a known member of the Manchester OG's, as prohibited by 18 Pa.C.S. §2702.

In violation of Title 18, United States Code, Section 1959(a)(3).

## COUNT SEVEN

The grand jury further charges that:

On or about October 5, 2005, in the Western District of Pennsylvania, the defendant, DEVON SHEALEY, knowingly, intentionally and unlawfully did use and carry a firearm during and in relation to crimes of violence, that being the violent crime in aid of racketeering activity alleged in Count Six of the Superseding Indictment, as well as the Conspiracy to conduct and participate in the affairs of an enterprise, which is engaged in interstate commerce, through a pattern of racketeering activity, as prohibited by Title 18, United States Code, Section 1962(d), as charged at Count Two of the Superseding Indictment, which is incorporated herein, and did possess said firearm in furtherance thereof.

In violation of Title 18, United States Code, Section 924(c)(1)(A)(iii).

59

## COUNT EIGHT

The grand jury further charges that:

From on or about March 30, 2006, to on or about April 4, 2006, in the Western District of Pennsylvania, the defendant NICKY EVANS a/k/a Yama, did knowingly, intentionally and unlawfully possess firearms, in furtherance of a crime of violence, that is  the Conspiracy to conduct and participate in the affairs of an enterprise, which is engaged in interstate commerce through a pattern of racketeering, as prohibited by Title 18, United States Code, Section 1962(d), as alleged in Count Two of the Superseding Indictment, which is incorporated herein.

In violation of Title 18, United States Code, Section 924(c)(1)(A)(i).

## COUNT NINE

The grand jury further charges that:

On or about April 4, 2006, in the Western District of Pennsylvania, the defendant, NICKY EVANS a/k/a Yama, after having been convicted on or about March 18, 1999, in the Court of Common Pleas of Allegheny County at CC# 1999-183 of Receiving Stolen Property, and on or about May 19, 2003, in the Court of Common Pleas at CC# 2000-8672 of robbery, which are offenses punishable by imprisonment for a term exceeding one year, did knowingly possess, in and affecting interstate commerce, a 9mm H-Point handgun.

In violation of Title 18, United States Code, Section 922(g)(1).

## COUNT TEN

The grand jury further charges that:

1. Paragraphs One and Two of Count Three of the Indictment are realleged and incorporated by reference, as though set forth fully herein.

2. On or about September 7, 2006, in the Western District of Pennsylvania, for the purpose of gaining entrance to and maintaining and increasing his position in the enterprise described in Count Two of the Superseding Indictment, an enterprise engaged in racketeering activity, which is engaged in and the activities of which affect interstate commerce, the defendant, **ARTHUR DAVIS a/k/a** Seven, knowingly, intentionally and unlawfully, did attempt to murder EM, a member of a rival gang, as prohibited by 18 Pa.C.S. §§901(a) and 2502(a).

In violation of Title 18, United States Code, Section 1959(a)(5).

## COUNT ELEVEN

The grand jury further charges that:

1.  Paragraphs One and Two of Count Three of the Indictment are realleged and incorporated by reference, as though set forth fully herein.

2.  On or about September 7, 2006, in the Western District of Pennsylvania, for the purpose of gaining entrance to and maintaining and increasing his position in the enterprise described in Count Two of the Superseding Indictment, an enterprise engaged in racketeering activity, which is engaged in and the activities of which affect interstate commerce, the defendant, ARTHUR DAVIS a/k/a Seven and knowingly, intentionally and unlawfully did assault with a dangerous weapon, BM, a rival gang member, as prohibited by 18 Pa.C.S. §2702.

In violation of Title 18, United States Code, Section 1959(a)(3).

## COUNT TWELVE

The grand jury further charges that:

1.  Paragraphs One and Two of Count Three of the Indictment are realleged and incorporated by reference, as though set forth fully herein.

2.  On or about September 7, 2006, in the Western District of Pennsylvania, for the purpose of gaining entrance to and maintaining and increasing his position in the enterprise described in Count Two of the Superseding Indictment, an enterprise engaged in racketeering activity, which is engaged in and the activities of which affect interstate commerce, the defendant, ARTHUR DAVIS a/k/a Seven, knowingly, intentionally and unlawfully, did attempt to murder WR, as prohibited by 18 Pa.C.S. §§901(a) and 2502(a).

In violation of Title 18, United States Code, Section 1959(a)(5).

## COUNT THIRTEEN

The grand jury further charges that:

1. Paragraphs One and Two of Count Three of the Indictment are realleged and incorporated by reference, as though set forth fully herein.

2. On or about September 7, 2006, in the Western District of Pennsylvania, for the purpose of gaining entrance to and maintaining and increasing his position in the enterprise described in Count Two of the Superseding Indictment, an enterprise engaged in racketeering activity, which is engaged in and the activities of which affect interstate and foreign commerce, the defendant, ARTHUR DAVIS a/k/a Seven and 2502(a) and knowingly, intentionally and unlawfully did assault with a dangerous weapon, WR, as prohibited by 18 Pa.C.S. §2702.

In violation of Title 18, United States Code, Section 1959(a)(3).

## COUNT FOURTEEN

The grand jury further charges that:

On or about September 7, 2006, in the Western District of Pennsylvania, the defendant ARTHUR DAVIS a/k/a Seven, knowingly, intentionally and unlawfully did use and carry a firearm during and in relation to crimes of violence, that being the violent crimes in aid of racketeering activity alleged in Counts Ten and Eleven of the Superseding Indictment, as well as the Conspiracy to conduct and participate in the affairs of an enterprise, which is engaged in interstate commerce, through a pattern of racketeering activity, as prohibited by Title 18, United States Code, Section 1962(d), as charged at Count Two of the Superseding Indictment, which is incorporated herein and did possess said firearm in furtherance thereof.

In violation of Title 18, United States Code, Section 924(c)(1)(A)(iii).

66

## COUNT FIFTEEN

The grand jury further charges that:

On or about September 7, 2006, in the Western District of Pennsylvania, the defendant ARTHUR DAVIS a/k/a Seven, knowingly, intentionally and unlawfully did use and carry a firearm during and in relation to crimes of violence, that being the violent crimes in aid of racketeering activity alleged in Counts Twelve and Thirteen of the Superseding Indictment, as well as the Conspiracy to conduct and participate in the affairs of an enterprise, which is engaged in interstate commerce, through a pattern of racketeering activity, as prohibited by Title 18, United States Code, Section 1962(d), as charged at Count Two of the Superseding Indictment, which is incorporated herein and did possess said firearm in furtherance thereof.

In violation of Title 18, United States Code, Section 924(c)(1)(A)(iii).

## COUNT SIXTEEN

The Grand Jury further charges:

On or about September 4, 2007, in the Western District of Pennsylvania, the defendants PHILLIP TURNER a/k/a Philly C and TERRANCE CLARK a/k/a Doodles a/k/a Doo Wop a/k/a Magnolia Wop, while possessing a firearm, knowingly and intentionally did take a motor vehicle, to wit, a 1997 Lincoln Continental, bearing VIN 1LNLM97V6VY690834, that had been transported, shipped and received in interstate commerce, from the person and presence of MG by force and violence and by intimidation.

In violation of Title 18, United States Code, Sections 2119 and 2.

## COUNT SEVENTEEN

The grand jury further charges that:

On or about September 4, 2007, in the Western District of Pennsylvania, the defendants PHILLIP TURNER a/k/a Philly C and TERRANCE CLARK a/k/a Doodles a/k/a Doo Wop a/k/a Magnolia Wop, knowingly, intentionally and unlawfully did use and carry a firearm during and in relation to crimes of violence, that being the offense of car jacking, as alleged in Count Sixteen of the Superseding Indictment, as well as the Conspiracy to conduct and participate in the affairs of an enterprise, which is engaged in interstate commerce, through a pattern of racketeering activity, as prohibited by Title 18, United States Code, Section 1962(d), as charged at Count Two of this Indictment, which is incorporated herein and did possess said firearm in furtherance thereof.

In violation of Title 18, United States Code, Section 924(c)(1)(A)(ii).

## COUNT EIGHTEEN

The grand jury further charges that:

From on or about December 16, 2007, to on or about December 17, 2007, in the Western District of Pennsylvania, defendant TERRANCE CLARK a/k/a Doodles a/k/a Doo Wop, knowingly attempted to corruptly obstruct, influence and impede an official proceeding; that is a prosecution for violations of Title 18, United States Code, Sections 111(a)(1) and 924(c), by attempting to get an individual, whose identity is known to the grand jury, to falsely admit to possession of the firearm the defendant CLARK possessed and used on December 11, 2007, to assault ATF Agents and Task Force Officers.

In violation of Title 18, United States Code, Section 1512(c)(2).

## COUNT NINETEEN

The Grand Jury further charges that:

From on or about March 22, 2008, to on or about August 15, 2008, in the Western District of Pennsylvania, defendant BRYANT MATHIS a/k/a B a/k/a Lil E did knowingly, intentionally and unlawfully possess firearms, in furtherance of a crime of violence, that is the Conspiracy to conduct and participate in the affairs of an enterprise, which is engaged in interstate commerce through a pattern of racketeering, as prohibited by Title 18, United States Code, Section 1962(d), as alleged in Count Two of the Superseding Indictment, which is incorporated herein.

In violation of Title 18, United States Code, Section 924(c)(1)(A)(i).

## COUNT TWENTY

The grand jury further charges that:

From on or about March 23, 2008, to on or about August 15, 2008, in the Western District of Pennsylvania, defendant AARON FORD a/k/a Forty a/k/a Forty Cal, did knowingly, intentionally and unlawfully possess firearms, in furtherance of a crime of violence; that is the Conspiracy to conduct and participate in the affairs of an enterprise, which is engaged in interstate commerce through a pattern of racketeering activity which includes crimes of violence, as prohibited by  Title 18, United States Code, Section 1962(d), as alleged in Count Two of the Superseding Indictment, which is incorporated herein.

In violation of Title 18, United States Code, Section 924(c)(1)(A)(i).

72

## COUNT TWENTY-ONE

The grand jury further charges that:

On or about March 24, 2008, in the Western District of Pennsylvania, the defendant, TERON JENKINS a/k/a Project, did knowingly, intentionally and unlawfully distribute and possess with intent to distribute a quantity of heroin, a Schedule I controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

## COUNT TWENTY-TWO

The grand jury further charges that:

On or about March 29, 2008, in the Western District of Pennsylvania, the defendant ROBERT COLBERT a/k/a Ballz, did knowingly, intentionally and unlawfully possess a .45 caliber Taurus pistol, model PT-145, bearing serial number NXE74312, in furtherance a crime of violence; that is the Conspiracy to conduct and participate in the affairs of an enterprise, which is engaged in interstate commerce through a pattern of racketeering activity which includes crimes of violence, as prohibited by Title 18, United States Code, Section 1962(d), as alleged in Count Two of the Superseding Indictment, which is incorporated herein.

In violation of Title 18, United States Code, Section 924(c)(1)(A)(i).

## COUNT TWENTY-THREE

The grand jury further charges that:

From on or about March 31, 2008, to on or about April 10, 2008, in the Western District of Pennsylvania, defendant ROBERT COLBERT a/k/a Ballz knowingly attempted to corruptly obstruct, influence and impede an official proceeding, that is a prosecution for being a felon in possession of a firearm, in violation of Title 18, United States Code, Section 922(g)(1), by soliciting KR, a juvenile, to swear out an affidavit falsely claiming that he possessed a .45 caliber Tarus handgun that defendant ROBERT COLBERT in fact possessed on March 29, 2008, as prohibited by Title 18, United States Code, Section 922(g)(1).

In violation of Title 18, United States Code, Section 1512(c)(2).

75

## COUNT TWENTY-FOUR

The grand jury further charges that:

On or about April 10, 2008, in the Western District of Pennsylvania, the defendant ROBERT COLBERT a/k/a Ballz, did knowingly, intentionally and unlawfully possess a firearm, in furtherance of a crime of violence that is the conspiracy to conduct and participate in the affairs of an enterprise, which is engaged in interstate commerce through a pattern of racketeering activity, as prohibited by Title 18, United States Code, Section 1962(d), as alleged in Count Two of the Superseding Indictment, which is incorporated herein.

In violation of Title 18, United States Code, Section 924(c)(1)(A)(i).

## COUNT TWENTY-FIVE

The grand jury further charges that:

On or about February 22, 2009, in the Western District of Pennsylvania, defendants DEVON SHEALEY and CHERYL CHAMBERS, herein, did knowingly corruptly attempt to obstruct, influence and impede official proceedings pending at Magistrate No. 08-605 (W.D. PA) in which defendant SHEALEY was charged with violating Title 18, United States Code, Section 922(g)(1) and at Criminal No. 05-390 (W.D. PA.) at which defendant SHEALEY was charged with violating the terms of supervised release, by offering to pay off NA, the victim of an armed robbery, referred to in Overt Act 66 of Count Two of this Indictment, in return for the victim's false testimony that defendant SHEALEY was not one of the individuals who robbed him at gun point.

In violation of  Title 18, United States Code, Section 1512(c)(2).

## COUNT TWENTY-SIX

The grand jury further charges that:

1.  Paragraphs One and Two of Count Three of the Indictment are realleged and incorporated by reference, as though set forth fully herein.

2.  On or about March 6, 2009, in the Western District of Pennsylvania, for the purpose of gaining entrance to and maintaining and increasing his position in the enterprise described in Count Two of the Superseding Indictment, an enterprise engaged in racketeering activity, which was engaged in and the activities of which affected interstate and foreign commerce, the defendant, DOMINIQUE STEELE a/k/a C-Flack, knowingly, intentionally and unlawfully did assault with a dangerous weapon an individual whose identity is unknown to the grand jury, as prohibited by 18 Pa.C.S. §2702.

In violation of Title 18, United States Code, Section 1959(a)(3).

## COUNT TWENTY-SEVEN

The grand jury further charges that:

On or about March 6, 2009, in the Western District of Pennsylvania, the defendant, DOMINIQUE STEELE a/k/a C-Flack, during and in relation to the commission of crimes of violence; that being the violent crime in aid of racketeering activity alleged in Count Twenty-Six of the Superseding Indictment, as well as the Conspiracy to conduct and participate in the affairs of an enterprise, which is engaged in interstate commerce, through a pattern of racketeering activity, as prohibited by Title 18, United States Code, Section 1962(d), as charged at Count Two of the Superseding Indictment, which is incorporated herein and did possess said firearm in furtherance thereof.

In violation of Title 18, United States Code, Section 924(c)(1)(A)(iii).

## COUNT TWENTY-EIGHT

The grand jury further charges that:

From on or about March 28, 2009, to on or about April 3, 2009, in the Western District of Pennsylvania, defendant BRYANT MATHIS a/k/a Lil B a/k/a B did knowingly corruptly attempt to obstruct, influence and impede an official proceeding, that is a prosecution for a violation of Title 18, United States Code, Section 922(g)(1), by having other individuals, whose identities are known and unknown to the grand jury, falsely claim possession of the 9mm Taurus handgun that defendant MATHIS possessed on March 28, 2009.

In violation of Title 18, United States Code, Section 1512(c).

## COUNT TWENTY-NINE

The grand jury charges that:

On or about June 22, 2009, in the Western District of Pennsylvania, the defendant RAYSHAWN MALACHI a/k/a Melly Mel, knowingly intentionally and unlawfully possessed with intent to distribute a quantity of heroin, a Schedule I controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

81

## COUNT THIRTY

The grand jury further charges that:

On or about June 24, 2009, in the Western District of Pennsylvania, the defendant, LAMON STREET a/k/a M-Dot a/k/a Mon, did knowingly, intentionally and unlawfully possess with intent to distribute a quantity of heroin, a Schedule I Controlled substance,

In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

## COUNT THIRTY-ONE

The grand jury further charges that:

On or about June 25, 2009, in the Western District of Pennsylvania, defendants MAURICE WALLACE a/k/a Reese and DWAYNE JOHNSON a/k/a Weezie a/k/a Fat Wayne knowingly, and intentionally attempted to corruptly obstruct, influence and impede an official proceeding, that is a suppression hearing at Criminal No. 08-418 (W.D. PA), wherein the defendant MAURICE WALLACE a/k/a Reese was charged with violating Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B)(iii), and Title 18, United States Code, Sections 924(c)(1)(A)(i), by presenting the false testimony of DWAYNE JOHNSON a/k/a Weezie a/k/a Fat Wayne that defendant WALLACE was not in defendant JOHNSON's vehicle on January 8, 2008, at the time that vehicle was pursued and stopped by Pittsburgh City Police Officers, when in truth and in fact, as the defendants WALLACE and JOHNSON well knew, defendant WALLACE was in said vehicle at that time.

In violation of Title 18, United States Code, Section 1512(c)(2).

## COUNT THIRTY-TWO

The grand jury further charges that:

On or about July 6, 2009, in the Western District of Pennsylvania, defendants MAURICE WALLACE a/k/a Reese and DWAYNE JOHNSON a/k/a Weezie a/k/a Fat Wayne knowingly, and intentionally attempted to corruptly obstruct, influence and impede an official proceeding, that is a trial at Criminal No. 09-418 (W.D. PA), wherein the defendant MAURICE WALLACE a/k/a Reese was charged with violating Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B)(iii), and Title 18, United States Code, Section 924(c)(1)(A)(i), by presenting the false testimony of DWAYNE JOHNSON a/k/a Weezie a/k/a Fat Wayne that defendant WALLACE was not in defendant JOHNSON's vehicle on January 8, 2008, at the time that vehicle was pursued and stopped by Pittsburgh City Police Officers, when in truth and in fact, as defendants JOHNSON and WALLACE well knew, defendant WALLACE was in said vehicle.

In violation of Title 18, United States Code, Section 1512(c).

## COUNT THIRTY-THREE

The grand jury further charges that:

On or about October 14, 2009, in the Western District of Pennsylvania, the defendant DWAYNE JOHNSON a/k/a Weezie a/k/a Fat Wayne, knowingly, intentionally and unlawfully possessed with intent to distribute 50 grams or more of a mixture and substance containing a detectable amount of cocaine base, in a form commonly known as crack, a Schedule II controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

## COUNT THIRTY-FOUR

The grand jury further charges that:

On or about October 14, 2009, in the Western District of Pennsylvania, the defendant DWAYNE JOHNSON a/k/a Weezie a/k/a Fat Wayne, did knowingly, intentionally and unlawfully possess a firearm, namely a Glock handgun, in furtherance of a crime of violence, that is the Conspiracy to conduct and participate in the affairs of an enterprise, which is engaged in interstate commerce through a pattern of racketeering activity, as prohibited by Title 18, United States Code, Section 1962(d), as alleged in Count Two of the Superseding Indictment, which is incorporated herein and in furtherance of the drug trafficking crime; that is the knowing, intentional and unlawful possession with intent to distribute a quantity of cocaine base, in a form commonly known as crack, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C),  as charged at Count Thirty Three of the Superseding Indictment.

In violation of Title 18, United States Code, Section 924(c)(1)(A)(i).

## COUNT THIRTY-FIVE

The grand jury further charges that:

On or about October 14, 2009, in the Western District of Pennsylvania, the defendant, DWAYNE JOHNSON a/k/a Weezie a/k/a Fat Wayne, after having been convicted on or about June 11, 2009, in the Court of Common Pleas of Allegheny County at CC# 2008-5409 of aggravated assault and on or about April 8, 2008, in the Court of Common Pleas of Allegheny County at CC# 2006-7351 of distribution and possession with intent to distribute a controlled substance,   which are offenses punishable by imprisonment for a term exceeding one year, did knowingly possess, in and affecting interstate commerce, a Glock handgun.

In violation of Title 18, United States Code, Section 922(g)(1).

87

## COUNT THIRTY-SIX

The grand jury further charges that:

On or about December 15, 2009, in the Western District of Pennsylvania, the defendant, PHILLIP TURNER a/k/a Philly C, after having been convicted on or about March 12, 2007, in the Allegheny County Court of Common Pleas at CC= 2006-12125 of Firearms not to be carried without a license which is an offense punishable by imprisonment for a term exceeding one year, did knowingly possess, in and affecting interstate commerce, a .357 Ruger handgun.

In violation of Title 18, United States Code, Section 922(g)(1).

## COUNT THIRTY-SEVEN

The grand jury further charges that:

On or about December 15, 2009, in the Western District of Pennsylvania, the defendant PHILLIP TURNER a/k/a Philly C, did knowingly, intentionally and unlawfully possess a firearm, namely a .357 Ruger handgun, in furtherance of a crime of violence; that is the Conspiracy to conduct and participate in the affairs of an enterprise, which is engaged in interstate commerce through a pattern of racketeering activity which includes crimes of violence, as prohibited by Title 18, United States Code, Section 1962(d), as alleged in Count Two of the Superseding Indictment, which is incorporated herein.

In violation of Title 18, United States Code, Section 924(c)(1)(A)(i).

## FORFEITURE ALLEGATIONS

1.   The Grand Jury re-alleges and incorporates by reference the allegations contained in Counts One, Thirty-Two and Thirty-Three of the Superseding Indictment for the purpose of alleging criminal forfeiture pursuant to Title 18, United States Code, Section 924(d), and Title 28, United States Code, Section 2461(c).

2.   As a result of the knowing commission of the violation of Title 18, United States Code, Section 922(g)(1) charged in Counts One, Thirty-One and Thirty-Three of the Superseding Indictment, the firearms alleged in those Counts, that is, the .45 caliber Taurus, model PT 145 pistol, bearing serial number NXE 74312, a Glock firearm and a .357 Ruger firarm, which were involved and used in the knowing commission of those offenses, is subject to forfeiture pursuant to Title 18, United States Code, Section 924(d)(1).

3.   If, through any act or omissions by the defendants, ROBERT COLBERT a/k/a Ballz, DWAYNE JOHNSON a/k/a Weezie a/k/a Fat Wayne and PHILLIP TURNER a/k/a Philly C, the property described in paragraph 2 above (hereinafter the "Subject Property):

    a.   Cannot be located upon the exercise of due diligence;

    b.   Has been transferred, sold to, or deposited with a third person;

    c.   Has been placed beyond the jurisdiction of the Court;

    d.   Has been substantially diminished in value; or

    e.   Has been commingled with other property which cannot be

subdivided without difficulty,

the United States intends to seek forfeiture of any other property of the defendants, ROBERT COLBERT a/k/a Ballz, DWAYNE JOHNSON a/k/a Weezie a/k/a Fat Wayne and PHILLIP TURNER a/k/a Philly C, up to the value of the Subject Property forfeitable above pursuant to Title 18, United States Code, Sections 924(d)(1), Title 21, United States Code, Section 853(p) and Title 28, United States Code, Section 2461(c).

_Kate Coradi_
Foreperson

_Robert S. Cessar_
ROBERT S. CESSAR
Acting United States Attorney

91